# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:07CV216-C

| | |
|---|---|
| ANGELA A. HUGHES, | ) |
|     Plaintiff, | ) |
| v. | )   **MEMORANDUM AND RECOMMENDATION** |
| HEWLETT-PACKARD COMPANY, | ) |
|     Defendant. | ) |

**THIS MATTER** is before the Court on the "Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint" (document #15) and ". . . Memorandum of Law in Support . . ." (document #16), both filed April 3, 2008. The Plaintiff filed her ". . . Memorandum in Opposition . . ." (document #19) April 21, 2008. On May 5, 2008, the Defendant filed its ". . . Reply Memorandum . . ." (document #22).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendant's Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motion for Partial Dismissal be **granted in part** and **denied in part** as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action seeking relief for retaliation and gender based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(e)(1) ("Title VII"), and state public policy.

The Plaintiff is a Waxhaw, North Carolina resident and former employee of the Defendant. The Defendant hired the Plaintiff in October 2001 as an IT technical staff member in the Charlotte, North Carolina sales office. Although it is not clear if she worked at home for the duration of her employment with the Defendant, the Plaintiff was for some time period allowed to perform her job functions from her home in Waxhaw, and allegedly performed the job satisfactorily.

In February 2005, the Plaintiff was subjected to regular abusive language by her manager, Ciaran Brett. The Plaintiff complained to human resources and Mr. Brett was required to publicly apologize for his conduct. In addition, the Plaintiff was transferred to a new supervisor, Joseph Moreland.

Mr. Moreland discouraged the Plaintiff from filing a complaint with human resources regarding Mr. Brett's conduct.[1] "After the filing of her charge, [the Plaintiff alleges that she] was subjected to stricter scrutiny in her work, she was harassed and demeaned by Mr. Moreland and she was ultimately targeted for a work force reduction which became effective December 16, 2005."

Through the subject Motion, the Defendant seeks dismissal of the Plaintiff's (1) state public policy claims because they are "outside the narrow parameters of the employment tort recognized by North Carolina's courts for discharge in violation of public policy"; and (2) the Title VII claims to the extent they are based on Mr. Brett's conduct because they are time-barred. As noted above, the Defendant's Motion has been fully briefed and is, therefore, ripe for determination.

---

[1] It is not clear from the Complaint whether Mr. Moreland was already the Plaintiff's supervisor when he discouraged the Plaintiff from filing her complaint with human resources, or became her supervisor thereafter.

## II. MOTION TO DISMISS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the United States Supreme Court's recent examination of this standard, it explained:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . . And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

See Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (internal citations omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

3

### B. North Carolina Public Policy Claim

The Plaintiff has alleged a violation of Title VII and North Carolina public policy based on (1) the Defendant's alleged gender discrimination when she was chosen for a work force reduction on December 16, 2005; and (2) the Defendant's alleged retaliation (stricter work scrutiny, poor evaluation, and termination) following her complaint to human resources.

The Defendant first argues that the Plaintiff's claims of retaliation in the form of stricter work scrutiny, abusive language, and a poor evaluation in violation of North Carolina public policy must fail because the public policy of North Carolina only protects employees from actual discharge – not an unfavorable work environment.[2]

The North Carolina Equal Employment Practices Act ("NCEEPA") provides that:

> [i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

North Carolina courts have recognized, however, a private right of action under this "public policy" only where the alleged discrimination resulted in termination. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531 (2005) (refusing to recognize public policy claims for constructive discharge, hostile work environment, or retaliation); Beck v. City of Durham, 154 N.C. App. 221, 231, 573 S.E.2d 183, 190 (2002) (affirming dismissal of constructive discharge claim); and Graham v. Hardee's Food Sys., 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996) (affirming

---

[2]The Plaintiff's claim for retaliation does not specifically refer to "abusive language," but for purposes of the subject Motion it will be assumed that this was intended as the Defendant asserts this as part of the claim and the Plaintiff has not contradicted this assertion.

4

summary judgment on constructive discharge claim).

Federal courts considering the issue have consistently refused to recognize a North Carolina state public policy claim other than where the plaintiff alleged that he was wrongfully terminated. See, e.g., Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (NCEEPA's public policy does not allow a claim for sexual harassment in the absence of termination); Hughes v. Bedsole, 48 F.3d 1376, 1383-84 (4th Cir.1995) (limiting North Carolina public policy claim to wrongful discharge); McFadden v. Trend Community Health Servs., 114 F. Supp. 2d 427, 430 (W.D.N.C. 2000) (North Carolina law does not provide employee private cause of action for constructive discharge); Cox v. Indian Head Industries, Inc., 123 F. Supp. 2d 892, 900 (W.D.N.C. 1999) (plaintiff's gender discrimination claim, as a statutory claim under NCEEPA, not viable); Ridenhour v. Concord Screen Printers, Inc., 40 F. Supp. 2d 744, 746 (M.D.N.C. 1999) (dismissing plaintiff's sexual harassment claim under N. C. Gen. Stat. § 143-422.2); and Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997) ( "[a]bsent a clear indication from the courts or legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA, and this court declines to do so").

Applying these legal principles to the facts of this case, to the extent that the Plaintiff's retaliation claim asserts a cause of action based upon abusive language, stricter work scrutiny, and poor evaluation in violation of North Carolina public policy, the claim must fail.

Next, the Defendant argues that both the sex discrimination and retaliation claims should be dismissed to the extent they have been brought pursuant to North Carolina public policy because a wrongful discharge in violation of public policy claim is only allowed where an employee alleges she was terminated either for refusing to perform an act prohibited by law or for performing an act

5

required by law.[3]

The Defendant relies largely on Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531 (2005), for the proposition that a wrongful discharge claim requires some affirmative demand of an employee by the employer to violate public policy. However, the holding in Whitt is not as clear as the Defendant asserts, as this Court recognized in a 2006 opinion:

> In its per curiam opinion, the Supreme Court of North Carolina stated, "[f]or the reasons stated in the dissenting opinion, the decision of the Court of Appeals is reversed." Whitt, supra. Looking to the dissenting opinion filed by the North Carolina Court of Appeals' majority opinion in Whitt, it is clear that the dissent was based on two reasons that 1) North Carolina does not recognize constructive discharge as a separate tort action; and 2) even were North Carolina to recognize such a doctrine, the facts of the case did not support the claim. See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 43-44, 598 S.E.2d 151, 159 (2004) (McCullough, J., dissenting).
>
> Whether the affirmation by North Carolina's Supreme Court is based upon one or both of the reasons stated in the dissent is unclear. That Court may have endorsed the dissent's idea that North Carolina has yet to recognize a claim of constructive discharge, or it may have simply believed that the record in Whitt was insufficient to support a claim of constructive discharge. Whatever the case may be, it is clear to the undersigned that the Supreme Court's per curiam opinion provides minimal guidance and should not be relied upon exclusively in disposing of this Plaintiff's constructive discharge claim.

McHan v. Cherokee County, NC, 2006 WL 3694540, *2 (W.D.N.C. Dec. 13, 2006). This Court concurs with the McHan Court's reading of Whitt, and therefore agrees that the Plaintiff's claims of actual termination should not be dismissed based on a possible affirmance of that portion of the dissenting opinion stating that North Carolina does not recognize public policy violations for constructive discharge.

---

[3] The Court recognizes that dismissal of these claims as to North Carolina public policy has no impact on the Plaintiff's ability to proceed pursuant to Title VII. Indeed, North Carolina courts "look to federal decisions [in Title VII cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." N.C. Dept. of Correction v. Gibson, 308 N.C. 131, 136, 301 S. E. 2d 78, 82 (1983). Accord Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995); and Phillips v. J.P. Stevens & Co., Inc., 827 F. Supp. 349, 353 (M.D.N.C. 1993) ( "The public policy of North Carolina expressed in N.C.G.S. § 143-422.1 et seq. is essentially identical to the public policy articulated in Title VII").

Further, federal courts have recognized claims of sex discrimination under the NCEEPA. See, e.g., Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (reciting the prima facie elements for a disparate treatment wrongful discharge claim under the NCEEPA); and Phillips v. J.P. Stevens & Co., Inc., 827 F. Supp. 349, 352-53 (M.D.N.C. 1993) (analyzing North Carolina law and allowing sex discrimination claim to proceed as alleged violation of North Carolina public policy). The North Carolina Court of Appeals has also found, in the context of a retaliation claim, a public policy exception to the employment-at-will doctrine where an employee is discharged "based on some activity by the employer contrary to law or public policy." Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 693-94, 575 S.E.2d 46, 51-52 (2003).

Accordingly, the Plaintiff's public policy claims based on her termination should not be dismissed, and the undersigned will respectfully recommend that the Defendant's Motion to Dismiss these claims be denied.

### C. Claims Based Upon Mr. Ciaran Brett's Conduct

The Defendant argues that to the extent any of the Plaintiff's claims are based upon the conduct of Mr. Brett, these claims should be dismissed as untimely. The Plaintiff has responded that the information regarding Mr. Brett's conduct in the Complaint is "part of Plaintiff's factual contentions and pleaded merely to establish the facts underlying the Plaintiff's claims of retaliation. Whether they are independently actionable is simply not at issue." Accordingly, it appearing that the Plaintiff does not intend to rely on Mr. Brett's conduct as the stand alone basis for any claim, the Motion to Dismiss on this basis should also be denied.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the

"Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint" (document #15) be **GRANTED** as to that portion of the Plaintiff's retaliation claim asserting abusive language, stricter work scrutiny, and poor evaluation in violation of North Carolina public policy, but **DENIED** as to the remainder of the Plaintiff's public policy claims, as discussed above.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED.**

Signed: June 16, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge